Chief Justice Watkins delivered the opinion of the Court. This was an action of covenant by the plaintiff against the defendants in error, on a bondfor the payment of money to the Bank, executed, as alledged by one John Brown, as principal, and these defendants as securities. Waddell, one of the defendants, plea-dedin bar of the action that the plaintiff had sued Brown for the breach of the same indentical obligation, in which suit Brown had interposed, pleas of payment and accord and satisfaction, upon which issues were formed, and tried by a jury, who found the issues in favor of the defendant, who thereupon had judgment, which remains in full force, and, in no wise, reversed or vacated, as would appear by the record of that suit. The plaintiff, resting on her demurer overruled to this plea, the defendants had judgment in the court below. Several objections are raised by the demurrer, but we shall consider the legal sufficiency of the plea, supposing the substantial factá set up in bar of the action to be technically well pleaded; and the question fairly stated is, whether if separate suits be brought for the same cause of action against co-obligors, where one is principal and the other is security, and the principal is discharged on the trial of a plea to the merits, which would enure to the benefit of both defendants if sued jointly, is such judgment in favor of the principal an estoppel against the plaintiff, if pleaded by the security in bar of the action against him. The theory of an estoppel is, that a party is thereby precluded from showing the truth of the matter, in .respect of which he is estopped; and, at first blush, it would seem that there should be some good reason why he is thus concluded. For we know that records, though they import absolute verity, do not always speak the truth as between the parties to the record. This is true in one sense, whenever causes are lost by faults in pleading, by failure of testimony, intangible fraud,- bias, or prejudice; because in, all such- cases, the judgment, though of ever so high and solemn a nature, is not in accordance with the real truth and merits of the controversy. The machinery of new trials, of bills for new trial, and the resort to chancery to be relieved against unconscionable judgments, the review in chancery are so many evidences that the best and best administered system of law is imperfect and but un approximation to truth. But the law has also a regard for the successful party, that he may not be twice vexed by another suit in respect of the same matter; and for this, and the greater reason of general policy, that there should be an end of litigation, seeing that in this, as in all else, partial evil is universal good, it ordinarily holds the parties to a suit to be concluded by the judgment, as to all matters that were in fact tried and determined by it. Where the absolute or technical estoppel by matter of record exists, it is a conclusive bar. As such estoppels are not always equitable, they are not favored; but, on the contrary, are governed by certain general rules which are inflexible to the extent that they enter into and constitute the doctrine itself. Thus, though all persons are presumed to be interested in a judgment, so far as this, that the public interest requires it to be held conclusive and a bar to a re-examination of the matter adjudicated, yet the doctrine of estoppel rests on the supposition that the re-examination sought is between the same parties, as well as in respect of the same subject matter, because of another anda higher rule of law, that no man shall be held bound by a proceeding to which he was not a party. And so the rule pervades the whole doctrine of estoppel at the common law, that it must be mutual. The unsuccessful party to a suitis concluded, because if the judgment had gone differently, his adversary would have been eqally concluded. So, if the tenant is estopped by the payment of rent, the landlord is equally estopped by its acceptance, from disputing the relation between them. It would seem that, under the application of these general rules, without going any farther into the doctrine of estoppel, and the case before the court does not require it, the bar attempted to be set up by the plea of the defendants is not ¡available to them.And it is to be observed that, under the construction given to our statute making all obligations in effect joint and several, and authorizing a party having a cause of action against several persons and entitled by law to bu-tone satisfaction, to sue all jointly, or as many of them as he may think proper, it is in the power of a plaintiff, by bringing separate suits to deprive each defendant of the bar arising from a recovery by another defendant. Perhaps it would be, according, to the decisions of this court, that the plaintiff, having made his election to sue all jointly, would be bound by that election and held to it with all its consequences, as at the common law, so that he could not afterwards discontinue as to one of the defendants, and a successful defence by one would necessarily enure to the benefit of all. But these decisions have been qualified by the case of Ferguson et al. v. The State Bank, 6 Eng. 514, to the extent that, although the plaintiff elects to sue all jointly, yet a successful defence by one shall not enure to the benefit of the others, unless it be a defence from which it necessarily follows that the plaintiff has no cause of action against any of the defendants. Thus, the pleas of non est factum and limitation, as well as discharge in bankruptcy, infancy, or the like, are held to be pleas going only to the personal discharge of the defendant pleading, them, because it might be true that the instrument sued upon is the deed of the other defendants, or that the cause of action is not barred as to them. While the true reason and policy of the statute are to enable the plaintiff to recover against such of the defendants as are liable to him, without regard to the joint character of the undertaking, its effect must also be that the same matter is examinable in each separate suit. It is not necessary that we should carry this consequence so far as is done by Mr. Greenleaf, who, in his treatise on evidence, VoL 1 sec. 539a, intimates that where the contract is several as well as joint, the judgment, in an action against one, is no bar to a subsequent action against all; nor is the judgment against all j ointly a bar to a subsequent action against one alone; because, in such a contract (and our statute enters into the contract and makes it several as well as joint) the obligors, in effect, agree that they will be subject to a joint action and to a several action for the same debt. ‘He proceeds to say, “In either case, therefore, the bar of a former judgment would not seem to apply; for, in a legal sense it was not a judgment between the same parties, nor upon the same contract. The contract, it is said, does not merely give the obligee an election of the one remedy or the other, but entitles him at once to both, though he can have but one satisfaction-..” And as authority for this, he relies upon several cases there cited. Probably the fair construction of the statute would be, that the bar of the former recovery is available to the party who was discharged upon a trial of the merits of the same matter in a former suit, without regard to whether either action was in form joint or several. But in no event would the estoppel he available to the party pleading it unless he was a party to the former suit. The plea, however, in this case, was evidently interposed upon the supposition that the principal debtor, having been discharged by a general verdict and judgment upon pleas of payment and accord and satisfaction, and his liability being thereby extinguished, it followed, as a necessary consequence, that the liability of the sureties was also extinguished. And it remains to enquire whether there is any thing in the nature of the contract here sued upon, which would give that effect to a judgment in favor of the principal debtor. The idea seems plausible enough, but we cannot find that it has any foundation in law. Though the relation of principal and security may exist between the co-obligors, yet so far as the obligee is concerned, they are all principals; in other words, it is an original undertaking on the part of all, and they are all equally bound to performance. They are not mere guarantors that the principal will pay; their liability is not merely consequential upon his failure to do so, but they are primarily liable for the debt. Such is the legal effect of the contract, and so far as the modifications of it in equity are to be regarded as exceptions, they go to establish the general rule. Courts of equity, and sometimes courts of law, where the relation of principal and surety exists, will protect and enforce the rights of the surety by a recourse against the principal and contribution among sureties, and as against the creditor, where he extends time or makes a new contract with the principal upon a consideration. So the creditor is required to act in good faith, and to do no unconscionable act to the prejudice of the surety. If collateral securities are placed in his hands, he must .not negligently lose the benefit of them, or capriciously abandon them. And of late years it has beenholden that if the creditor fail to sue the principal on request of the surety, and the principal, then solvent, afterwards become insolvent, the surety is released to the extent of the actual loss he proves that he has thereby sustained; and the theory of this new doctrine is, that the refusal of the creditor implies and is equivalent to an agreement to give time to the principal- Finally, by our statute, if the creditor fail to sue within a certain time, after notice and request in writing by the surety, the surety is absolutely discharged. But none of these modifications change or impair the validity of the contract as it originally stood. They proceed upon the idea that the surety is primarily bound, and are designed to mitigate the hardships growing out of the relation of principal and security, where it is recognized to exist. The security is allowed to say, “I am released from the .contract by reason of certain unconscionable acts of the creditor,” but he is not allowed to say, that he never entered into the contract, or to deny thatitisbindingupon him with all its legal consequences. True, Spencer, C. J., in King v. Baldwin, 17 J. R. 384, expresses the opinion “that the creditor is under an equitable obligation, and such is the essence of the contract, to obtain payment of the principal debtor, and not from the surety, unless the principal is unable to pay the debt,” but he uses it in connection with the circumstances of the case then under consideration, in which he was laboring to introduce a new rule as to the ex-.eruption of sureties, which was no doubt equitable but subject to the objection that the surety is allowed to procure his release from a written contract, by a mere verbal request with all its attendant uncertainty of proof. But if the language quoted is to be taken literally, or abstractly copsidered to be law, it would at once change the nature of all such contracts as understood at the common law, a change of which those; who part with their money or property on the faith of such securities, ought to be apprised- Nor is there any such privity between co-obligors, or between principal.and surety, .as would sustain the plea here interposed. An incident to the doctrine of estoppel is, that the estoppel binds not only the parties, but their privies, that is, those who succeed and represent them, and the privy is supposed to stand in the place of the party, and for all the purposes of the estoppel is regarded .as the party himself. The administrator, the heir, the assignee, are in privity with the intestate, the ancestor, the assignor, and therefore take the benefit as it was charged with any burthen in the hands of him whom they represent. There may be a joint interest or a community of interest in the subject matter of a contract between the parties, but it is not that privity or succession to which the estoppel applies. The strongest illustration of union and identity of interest is that subsisting between co-partners. Their contracts are not only necessarily joint, but there is a mutual agency, as to all matters within the scope of the partnership. But the case of Barkman v. Hopkins, 6 Eng, 160, is decisive of the question whether a co-partner is estopped by a judgment against the firm, in a suit to which he was not a party. There the point was whether, under the facts alleged, Barkman had notice so as to make him a party, but it was not argued or supposed that he was estopped by the judgment unless he was a party. There are contracts in which there is a sort of privity between the principal and the surety, but it grows out of the nature of the obligation, or the express terms of the contract. Thus, where one covenants in respect of the act or omission of another, he is bound by the act or omission, as the principal is bound by the act of his agent. So, the securities on injunction or appeal bonds are estopped or discharged, as the case may be, according to the condition of the bond, by the judgment rendered in the suit to which their principal is a party. The surety in a bond for the replevying of property seized under attachment, is bound by the judgment rendered against the principal; and if he disproves the debt and so has judgment, the condition of the bond, being but an incident to the debt, is fulfilled and the surety is discharged by the adjudication in favor of the principal. But if it be argued, that, in case before the court, the obligation of the surety was only an undertaking for the principal that he would pay the money; and that the surety is discharged by the adjudication that he does not owe it, in order for that to be so, it necessarily follows that the surety would be estoppel from denying that he is liable by the same judgmént, if it had been against the principal and in a suit to which he was not a party, of which he had no notice, into which he could not obtrude himself for the purpose of contesting, and from which he had no right of appeal —a startling proposition, so far as the right of sureties is concerned. Here the surety does not rely upon the fact of payment or satisfaction, as to which it might be supposed the same evidence, which discharged thepi'incipal, would discharge him, but he relies upon the technical estoppel of the judgment in favor of the principal as a bar to any enquiry as to the fact of payment or satisfaction, and we cannot give him the benefit of that bar, unless, at the same time, we either make a radical change in the terms of the original contract, or overturn a settled rule in the law of estop-pel. This question was discussed and decided in the case of Keller v. Bowell, 4 Hanks 34, referred to in the case of Douglass v. Howland, 24 Wendell 58. In Douglass'v. Howland, the case was, that two parties agreed in writing to settle certain partnership accounts, and that each party would pay to the other such sum ;as might be found due him.. Upon -this settlement, Howland endorsed his covenant with Douglass, one of the parties, to the ¡effect that Bingham, the other party, should on his part well and faithfully perform the agreement. In covenant upon these instruments, the declaration alleged that Bingham would not account or suffer an account to be taken, and that the plaintiff was obliged to file a bill in chancery to compel an account, and in that suit, a certain amount was ascertained to be due from Bing-ham, and he decreed to pay it to the plaintiff. It was insisted for the plaintiff, that the decree was conclusive, as to the measure of damages, in the action of covenant against the surety, but the court, in an elaborate opinion, held that he was not es-topped by the decree, to which he was not a party, and had no ■means of contesting; and it followed that neither the plaintiff, mor the surety was bound by it, but that as between them, the .enquiry as to the indebtedness of the principal, was at large — the .court conceding that, if Bingham had settled, the surety would ibnye been concluded by his'act, because within the scope of his covenant, but holding that the surety had not undertaken that the principal would satisfy any decree that might be rendered against him. So, in Jackson v. Griswold, 4 Hill 528, it was held that a surety for a debt is not bound by a decree or judgment pronounced in a-suit between his principal and the creditor, though the suit was conducted on the part of the principal, by the surety as his agent,—certainly a strong case, the decision resting on the ground that although the surety had notice of the suit, and in fact conducted' it; yet, in this he acted as a mere agent, whose authority was liable to revocation, and in spite of whom the principle might: have dismissed her bill or declined to appeal. This case is, however, to be noticed, because of an expression of the court or rather of the reporter, apparently sustaining the plea in this case,, to the effect that if, in a suit between the creditor and the principal, a decree or judgment be pronounced against the validity of the debt, this will operate to discharge the surety, and- consequently may be used as evidence in his favor: Without making; any question whether this, as a statement of a principle, is warranted by the language of the court, or the case before it, it would, seem that the court was speaking in reference to a class of cases where the surety would be either bound or discharged by the' judgment in the suit against the principal, by way of contrasts with the case then under consideration, and they cite, for- illustration, the case of a surety in a replevin bond, where a excision, against the debt would discharge the surety; not because he is a. party,but because the judgment extinguishes the debt and the obligation of the surety, being a mere incident with that, is destroyed with-it. That, we may suppose, was the condition of the bond.. And though the court proceed to say, that the extinguishment of a debt by a decision against it, “has the same effect as a release-by the creditor, or a payment- by the debtor, who may do any act in discharge of his surety, but nothing, by which he shall be concluded beyond his original obligation,” it cannot be intended to apply the estoppel' to a case where the contract on the part of the-surety is an original undertaking, and he unconditionally and primarily liable: else it is at variance with the decision made in the case; and at variance with the decision in the case of Douglass v. Howland, there cited and approved. The fact of a release by the creditor or payment by the debtor being1 established, discharges any obligation, where the creditor is estitled to but one satisfaction, without reference to the relation of principal and surety; and the question was there, as it is here, whether the nature or form of the obligation was such as to conclude the surety by a judgment on it against the principal. The cases cited on this point for the defendants in error, go to establish the general doctrine that a judgment is an estoppel to the parties to it and their privies, but it is no where intimated that there is any such privity between co-obligors as makes a judgment for or against one, an estoppel against the creditor and another of the obligors, not a party to the former suit. On the contrary, the cases of Hudson v. Robinson, cited from 4 Maule & Selw. 482, would be an authority to show that, in case a recovery had been had against these defendants, they would notbe estopped, by the judgment against Brown, to which they were not parties,, from the showing, in a suit against him for contribution or recourse, that he owed the debt notwithstanding his discharge as against the creditor. It is, for the reasons given, the opinion of the court, that the judgment of the circuit court be- reversed for the error in overruling the demurrer to the plea of Waddell; and because the defendants may desire to interpose further pleas, putting in issue the fact of payment, and accord and satisfaction, the cause will be remanded for trial upon the several pleas of non est factum, which appear to have been undisposed of, and with leave to the defendants to file additional pleas if they elect to do so.